UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GTJ REIT, INC.,

                                        Plaintiff,                          **COMPLAINT**

               - against -

                                                                   CV   **08   5167**

IRA J. GAINES and PEACHTREE PARTNERS,                                      SPATT, J.

                                        Defendants.                        LINDSAY,
------------------------------------------------------------X

Plaintiff GTJ REIT, Inc. ("GTJ" or "Plaintiff"), by its attorney, Ruskin Moscou

Faltischek, P.C., as and for its Complaint against defendants Ira J. Gaines ("Gaines") and

Peachtree Partners ("Peachtree") (together "Defendants"), alleges as follows:

                                  **NATURE OF CASE**

       1.       This case arises out of Defendants' latest attempt, in a long-running and

persistent scheme intended to deal in bad faith and to defraud shareholders in various public

companies through deceptive limited tender offers aimed at acquiring no more than 5% of the

target stock, known as mini-tender offers. In an effort to avoid detection by the Securities and

Exchange Commission, defendant Gaines has repeatedly changed the names of the entities used

to make his tender offers, sometimes shifting his identity even in the midst of an SEC

investigation. Gaines' deceptive mini-tender offers repeatedly have been the subject of SEC

enforcement proceedings and in 2004 resulted in a Final Judgment permanently enjoining

defendant Gaines, or anyone acting in concert with him, from making or engaging in mini-tender

offers.

       2.       Today, Gaines is barred from the business of making further mini-tender

offers.  The January 6, 2004 Judgment issued by the District Court of Arizona in favor of the SEC (the "SEC Judgment") permanently enjoins defendant Gaines, and all others acting in concert with him, from "directly, or indirectly, offering, making or engaging in a mini-tender offer."  In addition, the SEC Judgment permanently enjoins defendant Gaines, and all others acting in concert with him, from engaging in any fraudulent or deceptive conduct in connection with any tender offer or the purchase or sale of any security, as prohibited by the Securities Exchange Act of 1934 (the "Exchange Act").  Despite the clear and unequivocal language of the SEC Judgment, defendant Gaines continues to make mini-tender offers, and in fact, as shown by the facts of this case, currently is engaged in a deceptive and materially misleading mini-tender offer.

3.      GTJ recently learned that defendant Gaines, acting by or through defendant Peachtree, improperly obtained a copy of GTJ's stockholder list and has made an unsolicited mini-tender offer to the stockholders of GTJ to purchase up to 4.9% of the outstanding shares of GTJ.  Gaines' mini-tender offer violates the SEC Judgment.

4.      Defendants' tender offer documents contain multiple material misrepresentations and omissions, including false and misleading representations concerning the SEC Judgment itself, thereby violating not only the terms of the SEC Judgment, but also the applicable anti-fraud provisions of the Exchange Act.

5.      Despite GTJ's written notice to Defendants informing them of the material misrepresentations and omissions in their tender offer documents, and notifying Defendants of their violation of the SEC Judgment, Defendants have refused to withdraw their tender offer, refused to comply with the SEC Judgment, and are proceeding with their mini-tender order in

violation of the Exchange Act.

6.      Accordingly, GTJ now seeks a judgment: (i) declaring that Defendants'
mini-tender offer violates both the SEC Judgment and the anti-fraud provisions of the Exchange
Act; (ii) enjoining Defendants, or anyone acting on their behalf, from making any mini-tender
offers to the stockholders of GTJ; (iii) directing Defendants to withdraw their mini-tender offer
to the stockholders of GTJ and to issue an appropriate notice to correct the material omissions
and misrepresentation in that tender offer; and (iv) granting GTJ equitable relief in the form of an
order directing Defendants to disgorge any ill-gotten gains derived from their unlawful and
deceptive mini-tender offer, together with such other and further relief as the Court deems just
and appropriate, including an award of attorney's fees.

### JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to Section 27 of the
Exchange Act (15 U.S.C. § 78aa) and pursuant to 28 U.S.C. § 1331.

8.      Venue is proper pursuant to Section 27 of the Exchange Act (15 U.S.C. §
78aa) and 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim
occurred in the Eastern District of New York and because Defendant disseminated materially
false and misleading information in this district.

### THE PARTIES

9.      Plaintiff GTJ REIT, Inc. ("GTJ" or "Plaintiff") is a corporation organized
and existing under the laws of the State of Maryland with a principal place of business located at
444 Merrick Road, Lynbrook, New York 11563.

10.     GTJ is a real estate investment trust with over 300 stockholders, including

numerous stockholders residing in the Eastern District within the State of New York.   The

offering and distribution of GTJ's shares was registered under the Securities Act of 1933, as

amended (File No. 333-136110).  In addition, GTJ is required to file periodic reports with the

Securities and Exchange Commission pursuant to Section 15(d) of the Exchange Act.  As such,

GTJ is a "public company" within the meaning of the SEC Judgment.

        11.    Upon information and belief, defendant Ira J. Gaines ("Gaines") is an

individual residing in the State of Arizona with a business address located at 1819 East Morten

Avenue, Suite 180, Phoenix, Arizona 85020.  Upon information and belief, defendant Gaines

regularly transacts business within the State of New York, including, but not limited to, the

purchase and sale of securities.

        12.    Upon information and belief, defendant Peachtree Partners ("Peachtree")

is a general partnership organized and existing under the laws of the State of Arizona with a

principal place of business located at 1819 East Morten Avenue, Suite 180, Phoenix, Arizona

85020.  Upon information and belief, defendant Peachtree is controlled by defendant Gaines and

is used by defendant Gaines to purchase securities primarily by making tender offers for such

securities. Upon information and belief, defendant Peachtree regularly transacts business within

the State of New York, including, but not limited to, the purchase and sale of securities.

## BACKGROUND FACTS

        13.    As set forth below, defendant Gaines and the entities he controls have

repeatedly been the targets of investigations by the United States Securities and Exchange

Commission as a result of their ongoing and persistent scheme to defraud shareholders through

their deceptive and materially misleading mini-tender offers.

14.     The term "mini-tender offer" is a securities industry term for a tender offer resulting in ownership by the offerer of not more than 5% percent of the target company's securities.  Although mini-tender offers are not subject to the filing or procedural requirements of Section 14(d) of the Exchange Act, they are subject to the antifraud provisions of Sections 10(b) and 14(e) of the Exchange Act, and Rules 10b-5 and 14e-1 promulgated thereunder.

15.     Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 prohibit engaging in fraudulent, deceptive or misleading conduct in connection with the purchase or sale of any securities.

16.     Section 14(e) of the Exchange Act and Exchange Act Rule 14e-1 prohibit engaging in fraudulent, deceptive or misleading conduct in connection with any tender offer or a request or invitation for tenders.

## The Fraudulent Mini-Tender Offer Scheme by Defendant Gaines

17.     In an effort to protect the public from any further fraudulent activity, on or about August 28, 2002, the SEC commenced an action in the United States District Court for the District of Arizona (Phoenix Division), seeking to permanently enjoin defendant Gaines from violating the anti-fraud provisions in Sections 10(b) and 14(e) of the Exchange Act, and Rules 10b-5 and 14e-1 promulgated thereunder, and from engaging in an further mini-tender offers.  A copy of the SEC's August 28, 2002 Complaint is annexed hereto and incorporated herein as Exhibit "1".

18.     As set forth in the SEC Complaint, from September 1999 to March 2001, defendant Gaines, individually and doing business as Wrigley Drive Partners and Morten Avenue Partners, made fraudulent mini-tender offers to shareholders to purchase up to 1% of the

outstanding stock of 187 public companies. Defendant Gaines deceived shareholders by failing

to disclose in his offers the following material facts: (1) defendant Gaines's offer price was

below the prevailing market price; (2) defendant Gaines reserved sole discretion to modify his

offers, including such terms as the offer price and the offer period; and (3) defendant Gaines

reserved the right to terminate his offers without notice, regardless of how many shareholders

had tendered shares. According to the SEC Complaint, defendant Gaines knew, or was reckless

in not knowing, that the shareholders were not receiving this material information, as evidenced

by the fact that defendant Gaines previously agreed to an SEC Cease-and-Desist Order against

one of his prior companies, IG Holdings, Inc., for virtually identical conduct. A copy of the

August 19, 1999 Cease-and-Desist Order against IG Holdings, Inc. is annexed hereto as Exhibit

"2".

       19.    Also on August 19, 1999, the SEC issued a Cease-and-Desist Order

against defendant Peachtree, finding that defendant Peachtree had violated the Exchange Act in

connection with a mini-tender offer and ordering defendant Peachtree to cease and desist from

any future violation of Section 14(d) of the Exchange Act. A copy of the August 19, 1999

Cease-and-Desist Order against defendant Peachtree is annexed hereto as Exhibit "3".

       20.    As detailed in the SEC Complaint, defendant Gaines had previously come

under SEC scrutiny in connection with mini-tender offers conducted by defendant Gaines

between June 1998 and mid 1999 through an entity known as IG Holdings, Inc. Less than thirty

(30) days after issuance of the above Cease-and-Desist Orders, defendant Gaines resumed his

fraudulent tender offer scheme under a new business name, Wrigley Drive Partners, "to avoid the

taint associated with the Commission's Cease-and-Desist Order against IG Holdings." As set

forth in the SEC Complaint, when defendant Gaines became aware of the SEC's investigation into his Wrigley-related activities, he simply "discontinued using the business name of Wrigley, but continued his fraudulent tender offer scheme using the business name of Morten" while the Wrigley investigation was ongoing.  Exhibit 1, SEC Complaint, ¶¶ 10 to 15.

21.     On January 6, 2004, the United States District Court of Arizona issued an Agreed Final Judgment in favor of the SEC, permanently enjoining and restraining defendant Gaines, and all others acting in concert with him, from violating, directly or indirectly, Sections 10(b) and 14(e) of the Exchange Act and from engaging in any fraudulent or deceptive conduct in connection with the purchase or sale of any security or any tender offer.  A copy of the January 6, 2004 SEC Judgment is annexed hereto as Exhibit "4".

22.     In addition to the above injunctive relief, the SEC Judgment expressly prohibits defendant Gaines from engaging in mini-tender offers.  Specifically, the Judgment provides:

> FURTHER ORDERED that Defendant and his agents, servants, employees, attorneys, and all persons in active concert or participation with him who receive actual notice of this Agreed Final Judgment by personal service or otherwise are permanently restrained and enjoined from directly or indirectly, offering, making or engaging in a mini-tender offer, which is defined as an offer for less than five percent of a public company's equity securities that are not subject to the disclosure procedural rules that apply to other types of tender offers.  The above language does not pertain to offers to purchase bonds or limited partnerships.

23.     In its January 9, 2004 Litigation Release (No. 18535), the SEC expressly states that, under the terms of the January 6, 2004 SEC Judgment, defendant Gaines "is prohibited from directly or indirectly offering, making or engaging in mini-tender offers in the future." A copy of the Litigation Release No. 18535 is annexed hereto as Exhibit "5".

24.     Despite the above Judgment permanently enjoining defendant Gaines, or anyone acting in concert with him, from engaging in mini-tender offers, defendant Gaines, through the use of entities with different names designed to avoid detection by the SEC, continues to engage in fraudulent and deceptive mini-tender offers.

### Defendants' Unlawful Mini-Tender Offer to GTJ Stockholders

25.     On or about November 20, 2008, defendant Gaines, through defendant Peachtree, issued a mini-tender offer to the stockholders of GTJ seeking to purchase up to 4.9% of the outstanding shares of GTJ at a price of $6.00 per share.  A copy of Defendants' November 20, 2008 mini-tender offer is annexed hereto as Exhibit "6".

26.     The assignment form and limited power of attorney annexed to the GTJ mini-tender offer seeks to appoint defendant Gaines as the attorney-in-fact for all stockholders that elect to sell their shares pursuant to the mini-tender offer.

27.     Upon information and belief, Defendants, directly or indirectly, made use of the mails and other means or instrumentalities of interstate commerce, including electronic mail, facsimile transmissions, and commercial couriers, to transmit documents and information to GTJ stockholders within the Eastern District of New York, all in furtherance of their deceptive and misleading min-tender offer.

28.     Defendants' November 20, 2008 mini-tender offer to GTJ stockholders is a clear violation of the SEC Judgment, which permanently enjoines and expressly prohibits defendant Gaines from engaging in such mini-tender offers.

29.     In addition to violating the SEC Judgment, the GTJ mini-tender offer contains materially false, misleading and deceptive statements in violation of both the SEC

Judgment and the relevant anti-fraud provisions of the Exchange Act.

30.    Defendants' mini-tender offer contains the following false and misleading statement:

> In 2003, one of the principals [of Peachtree] entered into consent with the SEC enjoining him from offering, making or engaging in mini-tenders for a public company's equity securities.  This consent specifies that it does not pertain to offers to purchase limited partnership interests or private REIT shares such as this. The full text of the consent and final Judgment is available at (www.sec.gov).

31.    The above statement is false, misleading and deceptive because the January 6, 2004 SEC Judgment contains no express exception for mini-tender offers for private REIT shares and because it implies that Defendants' mini-tender offer to the stockholders of GTJ, a public company, is permitted under the SEC Judgment when, in fact, the SEC Judgment expressly prohibits such mini-tender offers. It also fails to identify the SEC Cease-and-Desist Orders previously issued against Peachtree and defendant Gaines's other companies. Furthermore, because this statement indicates that the Judgment was entered in 2003, rather than in January of 2004, does not identify the name of the principal of Peachtree (*i.e.*, defendant Gaines), and simply provides a link to the SEC's homepage, rather than a link to the SEC Judgment or the specific enforcement action against defendant Gaines, this statement is of little value to GTJ stockholders attempting to determine the nature of the SEC Judgment or the SEC's enforcement action.

32.    In addition to the above false or misleading statements, Defendants' mini-tender offer contains the following false, misleading, or inaccurate statements:

(a)    mischaracterizes GTJ's core business as "owning bus companies" when in fact GTJ is a real estate investment trust that is primarily engaged in leasing real estate to commercial tenants;

(b)        incorrectly states that accepting the mini-tender offer may simplify the stockholder's tax returns by eliminating future K-1 reporting by GTJ when, in fact, GTJ does not issue K-1 reports (which are not applicable to C-Corporations);

(c)        incorrectly characterizes GTJ as a partnership on the Power of Attorney annexed to the mini-tender offer when, in fact, GTJ is a C-Corporation; and

(d)        incorrectly states the number of outstanding shares of GTJ.

33.      Upon information and belief, Defendants' mini-tender offer falsely states that Peachtree has sufficient funds on hand to purchase all shares that will be tendered when, in fact, defendant Peachtree has insufficient funds on hand to purchase all such shares.

34.      Upon information and belief, Peachtree tender-offer of $6.00 per share of GTJ does not represent the fair value of GTJ's shares.

35.      Upon information and belief, rather than "intending to make a profit in the future", as stated in the Peachtree mini-tender offer, Defendants intend to make an immediate profit by purchasing shares of GTJ at below their fair value.

36.      In addition to Defendants' blatant violation of the SEC Judgment and fraudulent and deceptive conduct in violation of the Exchange Act, Defendants obtained a copy of GTJ's stockholder list through improper means.

37.      On or about November 3, 2008, GTJ furnished a copy of their stockholder list to Paradise Wire & Cable Defined Benefit Pension Plan ("Paradise"), a stockholder of record. GTJ is required pursuant to its articles of incorporation to furnish stockholders with a copy of the shareholder list upon request, but such requesting stockholders may only utilize the stockholders list in connection with matters relating to the stockholder's voting rights and the exercise of stockholder rights under federal proxy laws, and are not permitted to disclose the list

to third parties.

38.     The stockholder list was furnished to Paradise only after receipt of assurances from Paradise of its compliance with the foregoing provisions of the articles of incorporation.

39.     Upon information and belief, Paradise subsequently provided a copy of the stockholders list to Defendants – in violation of the relevant provisions of the article of incorporation and Paradise's representations to GTJ – for purposes of enabling Defendants to issue their unlawful mini-tender offer to GTJ's stockholders.

40.     The disclosure of the stockholder list by Paradise to Defendants violates the aforesaid provisions of GTJ's articles of incorporation.

41.     By letter dated December 3, 2008, GTJ informed Defendants of the false, misleading or inaccurate statements in their mini-tender offer and their clear violation of the SEC Judgment.  A copy of the December 3, 2008 Letter is annexed hereto as Exhibit "7".  To date, Defendants have failed or refused to comply with the Judgment and withdraw their mini-tender offer.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

42.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

43.     As set forth above, Defendants' mini-tender offer to the stockholders of GTJ is a blatant violation of the terms of the January 6, 2004 SEC Judgment, which permanently enjoined defendant Gaines, and all other acting in concert with him, from offering, making or engaging in mini-tender offers.

44.     As set forth above, Defendants' mini-tender offer contains material misrepresentations concerning the nature and scope of the January 6, 2004 SEC Judgment.

45.     As set forth above, Defendants' mini-tender offer contains multiple materially false, misleading and/or inaccurate statements and/or omissions concerning GTJ and the nature of the tender offer.

46.     Upon information and belief, Defendants knew the foregoing statements or material omissions were false, misleading and/or inaccurate or were reckless in failing to make a good faith effort to ascertain such facts when they were available to Defendants or could have been obtained with reasonable effort.

47.     The aforesaid false, misleading or inaccurate statements by Defendants constitutes violations of the anti-fraud provisions contained in Sections 10(b) and 14(e) of the Exchange Act, and Rules 10b-5 and 14e-1 thereunder, in connection with the making of a tender offer or the purchase or sale of securities.

48.     Despite receiving written notice from GTJ concerning the material misrepresentations and/or omissions contained in Defendants' mini-tender offer documents and the fact that Defendants' mini-tender offer violates the provisions of the January 6, 2004 SEC Judgment, which permanently enjoined Defendants from engaging in such mini-tender offers, Defendants have failed or refused to acknowledge their violation of the SEC Judgment or to withdraw their fraudulent mini-tender offer and correct their material misrepresentations and omissions.

49.     As a result of the foregoing, a justiciable controversy exists between GTJ and Defendants, requiring a judgment determining whether Defendants' mini-tender offer

violates the terms of the January 6, 2004 SEC Judgment and the relevant provisions of the
Exchange Act prohibiting deceptive and misleading conduct in connection with the purchase or
sale of any securities or the making of any tender offer.

       50.     Because Defendants' mini-tender offer clearly violates the SEC Judgment
and contains material misrepresentations and/or omissions concerning both GTJ and the nature
and scope of the January 6, 2004 SEC Judgment, GTJ now seeks a judgment from the Court
declaring that Defendants' fraudulent and deceptive mini-tender offer is prohibited by the
January 6, 2004 SEC Judgment and constitutes a violation of Sections 10(b) and 14(e) of the
Exchange Act, and permanently enjoining Defendants from proceeding with their unlawful mini-
tender offer.

       51.     GTJ has no adequate remedy at law.

      WHEREFORE, plaintiff GTJ REIT, Inc. respectfully requests that this Court enter
judgment in its favor and grant plaintiff the following relief:

     (a)     Declaring that Defendants' mini-tender offer is prohibited by the January
6, 2004 SEC Judgment and constitutes a violation of Sections 10(b) and
14(e) of the Exchange Act and Rules 10b-5 and 14e-1 thereunder;

     (b)     Permanently enjoining Defendants, their agents, servants, employees,
attorneys, successors and assigns, and all persons acting in concert or
participation with them, from offering, making or engaging in any mini-
tender offers for shares of GTJ;

     (c)     Directing Defendants to communicate the withdrawal of their mini-tender
offer to the stockholders of GTJ and to make appropriate statements to

correct the material omissions and misrepresentation in that offer;

(d)     Directing Defendants to disgorge all ill-gotten gains from the wrongful conduct alleged herein;

(e)     Directing Defendants to surrender all shares of GTJ obtained through the unlawful mini-tender offer;

(f)     Directing Defendants to return all copies of the GTJ stockholder list within their possession, custody or control to GTJ;

(g)     Awarding GTJ the costs and disbursements of this case, including reasonable attorney's fee pursuant to applicable law; and

(h)     Such other and further relief as the Court deems just and appropriate.

Dated:   Uniondale, NY
         December 23, 2008

RUSKIN MOSCOU FALTISCHEK, P.C.

By: _____
    Mark S. Mulholland
    Robert F. Regan
    Attorney for Plaintiff
    1425 RexCorp Plaza
    Uniondale, New York 11556
    (516) 663-6600